IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CRYSTAL DAWN WEBB § | |
| § | |
| V. § | A-12-CA-919-LY |
| § | |
| ROUND ROCK INDEPENDENT § | |
| SCHOOL DISTRICT § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss, filed on April 9, 2013 (Dkt. # 9), Plaintiff's Response, filed on April 18, 2013 (Dkt. # 10) and Defendant's Reply, filed on April 23, 2013 (Dkt. # 11). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.   GENERAL BACKGROUND

Plaintiff Crystal Webb ("Webb"), a custodial employee of Defendant Round Rock Independent School District ("RRISD"), has sued RRISD for alleged violations of Title VII of the Civil Rights Act of 1964. Webb, who is African American, began working for RRISD on August 16, 2011, as a night-time custodian at Stony Point High School. From the outset, it appears that Webb had a difficult time getting along with her coworkers and completing her job duties. Webb complains that "[a]lmost all of the employees are Hispanic and speak very little English" and points out that she is the only African American. *See* March 23, 2012 Charge of Discrimination, Attach. 7 to Plaintiff's Complaint. Webb further complains that her co-workers routinely have conversations and meetings in Spanish and that her supervisor "constantly talks about me in Spanish." *Id.*

On November 16, 2011, Webb filed an internal complaint with RRISD complaining that her supervisor, Oralia Sandoval, talked about her in Spanish and told her on one occasion to transfer "to a school where they speak English." *Id.* Webb alleges that after she filed the internal complaint, Ms. Sandoval retaliated against Webb by chastising her on one occasion for being late to work; telling her that she could not use the floor scrubber machine; and by "constantly checking behind me and telling me that I am not doing my work correctly." *Id.* On March 23, 2012, Webb filed her first EEOC Charge of Discrimination alleging race discrimination and retaliation based upon the above-events.

Webb further complains that her supervisor gave her a poor performance evaluation on April 9, 2012. The Performance Evaluation indicated that Webb was not meeting her job requirements in several areas such as leadership, performance results and management of work processes. Specifically, her supervisor noted that Webb does not follow her supervisor's instructions, fails to communicate with her colleagues, fails to report any problems in her area to her supervisor, fails to work as a team, fails to help when another employee is out, and that "she needs to improve her attendance." Performance Evaluation, Exh. 10 to Plaintiff's Response. The day after receiving the poor evaluation, Webb called in sick and did not return to work until May 1, 2012.

On June 14, 2012, Webb filed another internal complaint with RRISD, complaining that her coworker, Maria Barrraza, called her something in Spanish which she heard as "Nerglow or Neglow [sic]." June 27, 2012 EEOC Charge of Discrimination, Attach. to Complaint. However, following an internal investigation, RRISD determined that Barraza had not used a racial epithet, but had actually said "Jingle Bells." During the investigation, Webb's coworkers complained that Webb had been taking photos and videos of them without their permission. After the investigation, Webb's supervisors determined that the best solution for Webb and her coworkers was for Webb to transfer to another RRISD campus. Thus, on June 20, 2012, Webb was transferred to Brushy Creek

Complex, where she performed the same job duties as she had been performing at Stony Point High School. However, Webb was unhappy with the transfer and filed another EEOC Complaint on June 27, 2012, complaining that the transfer is "forcing me to have to walk a much further distance to work and jeopardizing my safety as I travel to and from work." See June 27, 2012 EEOC Charge of Discrimination. Webb alleges that she was transferred in retaliation for having filed internal complaints and the EEOC Charge of Discrimination. On July 18, 2012, Webb was transferred again, this time to CD Fulkes Middle School and Berkman Elementary, schools which are much closer to her home. Webb continues to this day to be employed as a custodian for RRISD.

RRISD has now filed the instant Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Webb cannot make out a *prima facie* case of employment discrimination or retaliation under Title VII because Webb did not suffer an adverse employment action.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even

if doubtful in fact)." *Id*. at 555. "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See *Id.* at 555 & n. 3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

## III. ANALYSIS

A.     **McDonnell Douglas Title VII Framework**

Title VII prohibits employers from discriminating based on an individual's race, color, religion, sex, or national origin. 42 U.S .C. § 2000e–2(a). Where, as here, a plaintiff only relies on circumstantial evidence, the Court must apply the familiar framework from *McDonnell Douglas* for Title VII claims. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Pursuant to that framework, Webb first must make a prima facie case of discrimination based on race. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). To establish a *prima facie* case, Webb must show that she:

(1) was a member of a protected group; (2) was qualified for the position in question; (3) was subjected to an adverse employment action; and (4) received less favorable treatment due to her membership in the protected class than did other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local* 745, 660 F.3d 211, 213 (5th Cir. 2011). If Webb makes a *prima facie* case, the burden then shifts to the Defendant to "articulate a legitimate, non-discriminatory reason for firing" her. *Vaughn*, 665 F.3d at 636. If it does so, Webb must "offer sufficient evidence to create a genuine issue of material fact either (1) that Defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Webb's] protected characteristic (mixed-motives alternative)." *Id.* (citation omitted).

**B.     Did Webb suffer an adverse employment action?**

RRISD argues that Webb cannot make out a *prima facie* case of racial discrimination under Title VII because she has failed to show that she has suffered an adverse employment action. The Court agrees.

It is well settled that the Fifth Circuit takes a "narrow view of what constitutes an adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000). Adverse employment actions include only "*ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)) (emphasis in original). Thus, an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action. *Id.* None of the actions that Webb complains about in her Complaint qualify as adverse employment actions under Title VII.

### 1.   Webb's Job Transfer

Web complains that her June 2012 transfer to the Brushy Creek Complex was discriminatory because she had to "walk a much further distance to work" and it jeopardized her safety. See June 27, 2012 EEOC Charge of Discrimination. While a job transfer can constitute an adverse employment action, the new position must be "objectively worse" than the original position. *Pegram*, 361 F.3d at 283. "Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Id.* Accordingly, a purely lateral transfer is not an adverse employment action. *See Burger v. Cen. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999). In *Burger*, the Fifth Circuit adopted Chief Judge Posner's reasoning on this issue:

> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. The Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial.

*Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (C.J. Posner)).

Webb's transfer from Stony Point High School to the Brushy Creek Complex was merely a lateral transfer that was not an adverse employment action. Webb does not dispute that the custodial position at the Brushy Creek Complex had the same job title, benefits, duties, and pay as Webb's previous position. Webb has failed to show that her transfer was in any way punitive or demotive. *See Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 303 (5th Cir. 2005). In fact, Webb's transfer was pursuant to her employment contract with RRISD which provides that "[a]ll personnel are employed subject to assignment and reassignment by the Superintendent or designee when the Superintendent determines that the assignment or reassignment is in the best interest of the

District." Exh. A to Defendant's Motion.  The fact that Webb preferred her position at Stony Point High School because it was closer to her house does not make the position at Brushy Creek objectively worse.  See *Cooper v. United Parcel Service, Inc.*, 368 F. App'x 469, 474 (5th Cir. 2010) ("Though a longer commute may have been inconvenient for Cooper, we cannot say that the new position was objectively worse such that it was the equivalent of a demotion."); *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (per curiam) ("[A]lthough the new job site was 30 or 35 minutes from [Plaintiff's] home, there is no evidence ... that [the Plaintiff's] new commute was unreasonable." (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (commute time increase from 5-7 to 30-40 minutes did not constitute an adverse employment action))).  Because Webb's lateral transfer to the Brushy Creek campus was not an adverse employment action, she has failed to establish a *prima facie* case of racial discrimination with regard to her job transfer.

### 2. Criticisms and Poor Performance Review

Webb further complains that her supervisor gave her a negative performance evaluation in April 2012 and often criticized her work.  An employer's criticism of an employee, without more, does not constitute an actionable adverse employment action.  *Breaux,* 205 F.3d at 157-58.  Similarly, poor performance reviews do not qualify as ultimate employment actions. *Cardenas-Garcia v. Texas Tech University*, 118 F. App'x 793, 794 (5th Cir. 2004), *cert. denied*, 546 U.S. 811 (2005). See also, *Mitchell v. Snow*, 326 F. App'x 852 (5th Cir. 2009) (lower-than-expected job performance review did not qualify as adverse employment action).  There is no assertion in this case that the negative performance evaluation or general criticisms of her work had any affect on her pay, opportunities for promotion or other similar conditions of employment.  Accordingly, the above-actions are not adverse employment actions.

### 3. Communication difficulties

Webb complains that her co-workers speak little English and routinely have conversations in Spanish. Webb further complains that her supervisor "constantly talks about me in Spanish" and on one occasion told Webb to "transfer to another school where they speak English." March 23, 2012 EEOC Charge of Discrimination. Finally, Webb complains that one of her co-workers once called her something in Spanish, which she heard as "Nerglow or Neglow [sic]." June 27, 2012 EEOC Charge of Discrimination. Again, none of Webb's complaints rise to the level of an adverse employment action.

First, the Court notes that the fact that the majority of Webb's co-workers are Hispanic and speak Spanish is not discriminatory under Title VII. The fact that co-workers may have been gossiping or talking about Webb does not rise to the level of an adverse employment action. See *Perez v. Norwegian-American Hospital, Inc.*, 93 F. App'x 910, 914 (7th Cir.) (co-workers gossiping and watching plaintiff did not show that she was discriminated against on the basis of sex), *cert. denied*, 543 U.S. 927 (2004). Moreover, the fact that the majority of Webb's co-workers spoke Spanish and communicated in Spanish does not show that she was discriminated against because of her race. In *Chhim v. Spring Branch Indep. Sch. Dist.*, 396 F. App'x 73, 74 (5th Cir. 2010), a custodial applicant, who did not speak Spanish, alleged that the school district has discriminated against him on the basis of his race and national origin when it refused to hire him for a custodial supervisor position. The position was ultimately filled by a Hispanic female fluent in both Spanish and English. The job description had stated that language skills in Spanish and English were "highly desirable." *Id.* at 74. The Fifth Circuit affirmed the district court's holding that "neither a preference nor a requirement of bilingual ability would constitute discrimination based on race or national origin." *Id.*

In addition, Webb's supervisor's comment that she should transfer to a school where the employee's speak English and the alleged "Nerglow" comment by a co-worker are also insufficient to constitute actionable adverse employment actions. The Supreme Court has repeatedly stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that a "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII")). see also, *Harrison v. Corrections Corp. of America,* 476 F. App'x 40, 44 (5th Cir. 2012) (holding that being subjected to racial slur and having overheard racial comments do not constitute adverse employment actions); *Moore v. United Parcel Serv., Inc.,* 150 F. App'x 315, 319 (5th Cir. 2005) (holding that several racial slurs by supervisors was insufficient to create a hostile work environment). There is no allegation that these comments were made in connection with any adverse employment action. See *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999) ("Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent"). Accordingly, Webb has not demonstrated that the above-comments were adverse employment actions.

4. **Webb's Unhappiness with her job**

Finally, the Court notes that Webb's apparent unhappiness with her job and her difficulty with getting along with her coworkers are not actionable under Title VII. "Title VII imposes no 'general civility code' and "does not reach the ordinary tribulation s of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State University*, 133 S.Ct. 2434, 2455 (2013) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). See also, *Faragher*, 524 U.S. at 788 (judicial standards must "filter out complaints attacking

9

'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). "Thus, complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII ." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir.2008) (quotations omitted).

**B. Webb's Retaliation Claim**

Webb also alleges that RRISD retaliated against after she filed internal complaints and her EEOC Charges of Discrimination. To establish a *prima facie* case of retaliation under Title VII, Webb must prove: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir.), *cert. denied*, 133 S.Ct. 136 (2012). If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996)). If the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action. *Id.*

There is no dispute that Webb engaged in protected activity in this case. Therefore, Plaintiff must next show that an adverse employment action occurred. In order to demonstrate that an adverse employment action occurred, Plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted). A plaintiff is required to show "*material* adversity" because "it is important to separate significant from trivial harms." *Burlington*, 548 U.S. at 68. Thus, "[a]n employee's decision to report discriminatory

behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

Webb claims that she was retaliated against by: (1) her supervisor's verbal reprimand of her for being late to work; (2) receiving a poor performance evaluation; (3) her transfer to another campus; (4) being talked about and laughed at by her co-workers in Spanish; and (5) receiving unfair treatment. None of these actions qualify as materially adverse employment actions. See *Mitchell v. Snow*, 326 F. App'x. 852, 856 (5th Cir. 2009) (lower than expected job performance review did not qualify as adverse employment action to demonstrate retaliation); *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (holding that allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions to constitute retaliation), *cert. denied*, 129 S.Ct. 2053 (2009); *Chapa v. Floresville Indep. Sch. Dist.*, 2012 WL 3062781 at * 9 (W.D. Tex. July 26, 2012) (being treated poorly by supervisor, being chastised by supervisor and alleged scrutiny by supervisor do not rise to the level of material adversity).

While the Fifth Circuit has recognized that a lateral reassignment to a position with equal pay (in the context of a Title VII retaliation claim) could amount to a materially adverse action in some circumstances, "this depends on the facts of the particular case, which must be judged from the perspective of a reasonable employee." *Harrison*, 476 F. App'x at 45. Webb cannot show that her transfer was materially adverse because Webb's new position did not offer less opportunities for promotion or salary increases, did not involve a greater likelihood of termination, or the like. Accordingly, Webb's transfer does not constitute an adverse employment action as required to establish a *prima facie* case of retaliation.

Even if Webb did demonstrate that she suffered an adverse employment action, she still has not alleged a *prima facie* retaliation claim since she has failed to satisfy the third prong: that there

was a causal connection between her protected activity and the adverse employment action. Other than her subjective belief that she was retaliated against, Webb has failed to show any causal connection between her protected activity and the alleged adverse employment actions. Accordingly, Webb has failed to assert a *prima facie* claim of retaliation under Title VII.

### IV.  Recommendation

Based upon the foregoing, Webb has failed to assert a *prima facie* claim of discrimination or retaliation under Title VII and, therefore, the Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant RRISD's Motion to Dismiss (Dkt. # 9) in its entirety and **DISMISS** all of Plaintiff's claims in this case.

### V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 16th day of August, 2013.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE